UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINQUE ZAFIR CASEY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SGT. BROWN, et al.,<br><br>　　　　Defendants. | No. 1:23-cv-01068-JLT-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 34) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed May 22, 2025.

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding on Plaintiff's claims for excessive force against Cruz, Castellanos,[1] Vieth,[2] Duran, Godfrey; and failure to intervene against Brown, Bess, and Diaz. (ECF No. 13.)

Defendants filed an answer to the operative complaint on May 15, 2024. (ECF No. 20.)

---

[1] Erroneously sued as "Castellanos."

[2] Erroneously sued as "Veith."

1

1       On June 13, 2024, the Court issued the discovery and scheduling order. (ECF No. 25.)

2       On May 22, 2025, Defendants filed the instant motion for summary judgment.[3] (ECF No.

3  34.) Plaintiff did not file an opposition and the time to do has passed.[4] Accordingly, Defendants'

4  motion for summary judgment is deemed submitted for review without oral argument. Local

5  Rule 230(l).

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine

---

[3] Concurrently with the motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[4] On June 4, 2025, Plaintiff filed a notice of change of address. (ECF No. 35.) Defendants re-served their motion for summary judgment on Plaintiff at his new address of record on June 9, 2025. (ECF No. 36; Declaration of Caitlin Ryan ¶ 2.)

2

issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

## II.

## DISCUSSION

### A.   Summary of Plaintiff's Complaint

On March 27, 2020, at 0804 hours, officers Castellanos, Godfrey, Duran and Cruz cuffed Plaintiff's hands and ankles following a dispute regarding Plaintiff's telephone call. While cuffed and face down on the ground, officers Cruz, Castellanos and Duran stomped and kicked Plaintiff while officer Godfrey held Plaintiff's legs. Officer Vieth then stepped over Plaintiff, poured water from the toilet on his face multiple times and hit him with the cup multiple times on the face and head. Officers Cruz, Duran and Castellanos punched, kicked and stomped Plaintiff and officers Cruz and Duran dragged Plaintiff by the legs out of the cell. Officer Castellanos then kicked Plaintiff in the face causing him to bleed. Officer Medina was the tower cop who pressed the alarm. Officers Cruz and Duran continued to drag Plaintiff while officers Bess and Diaz watched and sergeant Brown ran toward Plaintiff. Sergeant Brown did not stop Plaintiff from being dragged. Officers Duran and Cruz left Plaintiff by the holding cage in a puddle of blood and walked towards sergeant Brown. Then officer Godfrey grabbed Plaintiff by the legs and leaned on them and said, "that's what you get."

### B.   Statement of Undisputed Facts[5,6]

1.   Plaintiff, who was housed at Kern Valley State Prison (KVSP) on March 27, 2020. He was in Administrative Segregation in a single-cell. (Decl. of DAG C. Ryan in Supp. of Defs.' Mot. for Summ. J. (Ryan Decl.), Ex. 23 (Pl.'s Dep. at 53:9-12.)

2.   Plaintiff told KVSP prison staff on March 2, 2020 and March 12, 2020 that he was

---

[5] Hereinafter referred to "UF."

[6] Because Plaintiff did not file an opposition, the Court accepts Defendants' statement of facts, except where brought into dispute by Plaintiff's verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence).

1 suicidal. (Ryan Decl., Ex. 14 at 30-31.)

2     3.    On March 27, 2020, Plaintiff covered his cell window with cardboard so no one
3 could see inside. (Pl.'s Dep. at 55:4-13.)

4     4.    At KVSP, it is against the prison rules to cover up the windows of a cell as it is a
5 safety concern. (Pl.'s Dep. at 55:24-25; Decl. of Def. G. Brown in Supp. of Defs.' Mot. for
6 Summ. J. (Brown Decl.) at ¶ 6.)

7     5.    Defendants Cruz, Duran, Castellanos, and Godfrey entered Plaintiff's cell to
8 conduct the cell extraction. During the cell extraction, Defendants Cruz and Duran punched
9 Plaintiff in the face. Plaintiff was eventually removed from his cell. (Decl. of DDA J. Alindajao
10 in Supp. of Defs.' Mot. for Summ. J. (Alindajao Decl.), Ex. 13 at 25, 36-38, 40.)

11     6.    Plaintiff was actively resisting officers during the cell extraction when force was
12 used. (Pl.'s Dep. at 80:5-9.)

13     7.    Plaintiff pled no contest to a violation of California Penal Code § 69, resisting or
14 obstructing a peace officer, in criminal court, and he stipulated that the factual bases of his plea
15 were the Defendants' incident reports. (Ryan Decl., Ex. 15 at 7; Ryan Decl., Ex. 16; Alindajao
16 Decl.; Pl.'s Dep. at 108:4-17.)

17     8.    Plaintiff pled in his criminal case to the entirety of the incident that encompasses
18 his current allegations. (Pl.'s Dep. at 108:4-17.)

19     9.    Plaintiff is serving a determinate term of confinement for 13 years and 8 months
20 from when he was sentenced December 3, 2014. (Ryan Decl., Ex. 15. at 16.)

21     10.    Plaintiff was sentenced to three years in prison to run concurrent with his
22 underlying sentence. (Ryan Decl., Ex. 15 at 7.)

23     11.    Plaintiff was found guilty of a Rules Violation Report (RVR) for battery on a
24 peace officer with a weapon, for throwing his walker at Defendant Cruz, injuring him. (Ryan
25 Decl., Ex. 14 at 2.)

26     12.    Plaintiff lost 360 days good-time credits. (Ryan Decl., Ex. 14 at 5; Ryan Decl.,
27 Ex. 15 at 18.)

28     13.    The procedures for emergency cell extractions are outlined in section 51020.12.2

1  of the Department of Corrections and Rehabilitation's Department Operation Manual (DOM).
2  (Ryan Decl., Ex. 17.)

3      14.    "An extraction is the involuntary removal of an inmate from an area and usually
4  occurs when the inmate is in a confined area such as a cell, holding cell, shower, or small exercise
5  yard." (Ryan Decl., Ex. 17 at 6.)

6      15.    "Extractions can be conducted as a controlled or immediate use of force." (Ryan
7  Decl., Ex. 17 at 6.)

8      16.    "Immediate extractions occur when an imminent threat exists. Some examples of
9  when an immediate extraction may be necessary are: to prevent or stop, great bodily injury and/or
10 serious bodily injury, attempted suicide, self-harm, in-cell assault, or for medical concerns such as
11 an inmate is non-responsive, convulsive, or seizing." (Ryan Decl., Ex. 17 at 6.)

12     17.    When conducting an emergency cell extraction in an Administrative Segregation
13 Unit, officers are entitled to use a riot helmet with a protective face shield, a protective vest, a
14 protective shield, hand-held batons, and handcuffs. (Ryan Decl., Ex. 17 at 6.)

15     18.    Because an emergency cell entry is considered an immediate use of force,
16 advanced planning, staffing, and organization are not required. (Ryan Decl., Ex. 17 at 6.)

17     19.    All Defendants, except Defendant Vieth, wrote Incident Reports about their
18 interaction with Plaintiff on March 27, 2020. (Alindajao Decl., Ex. 13.)

19     20.    At 8:04 a.m., Defendant Castellanos walked past Plaintiff's cell in Administrative
20 Segregation and saw that Plaintiff had placed cardboard over the windows, completely obscuring
21 any view of the inside of the cell. (Alindajao Decl., Ex. 13 at 25-41; Pl.'s Dep. at 54:14-19.)

22     21.    Plaintiff was aware that covering his windows was against the rules. (Pl.'s Dep.
23 at 55:24-25.)

24     22.    Defendant Castellanos attempted to contact Plaintiff, but Plaintiff was non-
25 responsive. (Alindajao Decl., Ex. 13 at 37.)

26     23.    Defendant Castellanos immediately alerted Defendant Brown, the sergeant on
27 duty. (Alindajao Decl., Ex. 13 at 37.)

28     24.    Defendant Brown also attempted to contact Plaintiff, but Plaintiff was still non-

1   responsive.  (Alindajao Decl., Ex. 13 at 25-26.)

2       25.    Fearing for Plaintiff's safety and following protocol, Defendant Brown ordered an
3   emergency cell extraction and gathered a team of officers to enter the cell.  (Alindajao Decl., Ex.
4   13 at 25-26.)

5       26.    Defendant Duran was assigned as the shield officer, Defendant Cruz was the baton
6   officer, Defendant Castellanos was the handcuff officer, Defendant Godfrey was the leg iron
7   officer, and Defendants Diaz and Bess were the escort officers.  (Alindajao Decl., Ex. 13 at 25-
8   26.)

9       27.    Once the extraction team was in place, Defendant Castellanos sounded the
10  building alarm, and the control booth officer opened Plaintiff's cell door.  (Alindajao Decl., Ex.
11  13 at 37.)

12      28.    As soon as the cell door opened, Plaintiff jumped off his bed and swung his walker
13  at the officers.  (Alindajao Decl., Ex. 13 at 25, 36-38, 40.)

14      29.    The walker hit Defendant Duran's shield, causing him to drop it.  (Alindajao Decl.,
15  Ex. 13 at 25, 36-38, 40.)

16      30.    Plaintiff ignored commands to "Get down," continued swinging the walker,
17  eventually throwing it at the officers, hitting Defendant Cruz in the arm.  (Alindajao Decl., Ex. 13
18  at 25, 36-38, 40.)

19      31.    Defendant Cruz' arm bled from being hit with the walker.  (Alindajao Decl., Ex.
20  13 at 25, 38, 46.)

21      32.    After swinging and throwing his walker, Plaintiff continued to be combative with
22  officers by swinging his fists and kicking his feet at officers.  (Alindajao Decl., Ex. 13 at 25, 36-
23  38, 40.)

24      33.    Plaintiff refused to follow officers' verbal commands during the cell extraction.
25  (Alindajao Decl., Ex. 13 at 25, 36-38, 40.)

26      34.    Because Plaintiff had assaulted staff and continued to refuse to comply with
27  orders, Defendant Duran, fearing for the officers' safety, hit Plaintiff three times in the face with
28  his fists.  (Alindajao Decl., Ex. 13 at 40; Decl. of Def. J. Duran in Supp. of Defs.' Mot. for Summ.

6

1 | J. (Duran Decl.) at ⁋ 5.)

2 | 35. Even after Defendant Duran punched Plaintiff, Plaintiff continued to be combative
3 | with officers. (Alindajao Decl., Ex. 13 at 25, 36-38, 40.)

4 | 36. Also fearing for officers' safety, Defendant Cruz holstered his baton and grabbed
5 | Plaintiff's arm and punched him once in the face. (Alindajao Decl., at Ex. 13 at 38; Decl. of Def.
6 | E. Cruz in Supp. of Defs.' Mot. for Summ. J. (Cruz Decl.) at ⁋ 5.)

7 | 37. Defendants Cruz and Duran were able to use their body weight to get Plaintiff on
8 | the ground inside of his cell. (Alindajao Decl., Ex. 13 at 38, 40.)

9 | 38. Defendant Godfrey placed leg restraints on Plaintiff, and Defendant Castellanos
10 | placed handcuffs on Plaintiff. (Alindajao Decl., at Ex. 13 at 36-37.)

11 | 39. Eventually, Plaintiff calmed down enough to be brought up to his feet, so
12 | Defendants Cruz and Duran attempted to escort Plaintiff out of his cell. (Alindajao Decl., Ex. 13
13 | at 38, 40.)

14 | 40. While escorting Plaintiff out of the cell, without warning or provocation, Plaintiff
15 | twisted violently and thrashed his body. (Alindajao Decl., Ex. 13 at 25, 36-38, 40.)

16 | 41. While Plaintiff thrashed his body, while being escorted out of his cell, Defendants
17 | Cruz and Duran told Plaintiff to stop resisting. (Alindajao Decl., Ex. 13 at 38, 40.)

18 | 42. Plaintiff failed to follow Defendants Cruz and Duran's commands to stop resisting,
19 | so using Plaintiff's momentum, Defendants Cruz and Duran forced Plaintiff to the ground outside
20 | of his cell. (Alindajao Decl., Ex. 13 at 38, 40.)

21 | 43. Defendant Brown saw that Defendant Cruz was actively bleeding and Defendant
22 | Duran's hand was swollen, so he relieved them of their duties and sent them to seek medical
23 | treatment. (Alindajao Decl., Ex. 13 at 25.)

24 | 44. Defendants Bess and Diaz assisted Plaintiff to his feet, after Defendants Cruz and
25 | Duran were relieved of duty, and began escorting him to the holding cells. (Alindajao Decl., Ex.
26 | 13 at 33-34.)

27 | 45. While Defendants Bess and Diaz were escorting Plaintiff, Plaintiff began to
28 | violently twist and would not obey commands to "stop resisting." (Alindajao Decl., Ex. 13 at 33-

1  34.)

2  46. Defendants Bess and Diaz had to put Plaintiff back on the ground, while he
3  continued to thrash and kick. (Alindajao Decl., Ex. 13 at 33-34.)

4  47. While Plaintiff was on the ground in the hallway towards the holding cells,
5  Defendant Brown spoke to Plaintiff and was able to calm him down enough for Defendants Bess
6  and Diaz to place him in the holding cell. (Alindajao Decl., Ex. 13 at 25, 33-34.)

7  48. Plaintiff was placed in a holding cell at 8:10 a.m., where photographs were taken,
8  and he was seen by medical staff. (Alindajao Decl., Ex. 13 at 29, 30, 31, 33, 34, 47, 49.)

9  49. No one reported Defendant Vieth being present or participating in the extraction
10 whatsoever. (Alindajao Decl., Ex. 7; Brown Decl. at ¶ 12; Cruz Decl. at ¶ 7; Duran Decl. at ¶ 7;
11 Decl. of J. Vieth in Supp. of Defs.' Mot. for Summ. J. (Vieth Decl.) at ¶¶ 8-9.)

12 50. The entire incident did not last more than ten minutes. (Pl.'s Dep. Tr. at 76:21-
13 23.)

14 51. The day after the incident, Plaintiff filed a Grievance regarding the incident.
15 (Decl. of H. Moseley in Supp. of Defs.' Mot. for Summ. J. (Moseley Decl.), Ex. 3; Decl. of T.
16 Redmon in Supp. of Defs.' Mot. for Summ. J. (Redmon Decl.), Ex. 21.)

17 52. In Plaintiff's initial Grievance, he alleged he was hit repeatedly with a battering
18 ram through the slot in his cell door after barricading himself in the cell with his walker.
19 (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

20 53. Plaintiff alleged in his initial Grievance, but not in his second amended complaint
21 or deposition that he was pepper sprayed. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21; ECF
22 No. 11.)

23 54. Plaintiff alleged in his initial Grievance, that officers entered his cell and
24 immediately started punching him in the face and stomach. (Moseley Decl., Ex. 3; Redmon
25 Decl., Ex. 21.)

26 55. Plaintiff alleged in his initial Grievance, that officers choked him and hit him with
27 a pepper spray cannister. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

28 56. Plaintiff alleged in his initial Grievance, that officers kicked, stomped, and hit him

1  with the pepper spray cannister again. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

2  57.  The only named officer in Plaintiff's initial Grievance is "Ms. V." who allegedly
3  poured toilet water on him. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

4  58.  In Plaintiff's initial Grievance, there are no other named officers, no mention of
5  being dragged in the hallway, a failure to intervene, or any mention of use of force near the
6  holding cells. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

7  59.  Plaintiff's initial Grievance bypassed the first level of review and went to the
8  second level of review. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

9  60.  Plaintiff's initial Grievance bypassed the first level of review and went to the
10  second level of review. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

11  61.  After conducting interviews with all Defendants in this lawsuit, the control tower
12  officer, two inmates, and Plaintiff, the appeal reviewer found staff did not violate protocol.
13  Plaintiff appealed the decision on May 27, 2020. (Moseley Decl., Ex. 3; Redmon Decl., Ex. 21.)

14  62.  Plaintiff appealed the decision on May 27, 2020. (Moseley Decl., Ex. 3; Redmon
15  Decl., Ex. 21.)

16  63.  Plaintiff's appeal of his initial Grievance was denied. (Moseley Decl., Ex. 3;
17  Redmon Decl., Ex. 21.)

18  64.  Plaintiff was charged with violating prison rules by committing a battery on a
19  peace officer with a deadly weapon. (Ryan Decl., Ex. 14 at 2.)

20  65.  At his hearing, Plaintiff pled "not guilty," and provided a written statement that
21  was considered by the senior hearing officer. (Ryan Decl., Ex. 14 at 4, 5, 21.)

22  66.  Plaintiff was found guilty of battery on a peace officer with a deadly weapon in
23  violation of California Code of Regulations, Title 15, Section 3005(d)(1). (Ryan Decl., Ex. 14 at
24  5.)

25  67.  The senior hearing officer cited the Incident Reports written by Defendants Duran,
26  Brown, Godfrey, Castellanos, and Cruz, which noted that when they entered the cell, Plaintiff
27  unexpectedly used his walker as a weapon against officers in coming to his guilty verdict. (Ryan
28  Decl., Ex. 14 at 5.)

      68.    The senior hearing officer also cited the CDCR form 7219, which showed the injuries sustained by Defendant Cruz on his arm, and concluded they were consistent with being hit by a walker in coming to his guilty verdict. The senior hearing officer also considered Plaintiff's 7219 which only showed that Plaintiff suffered a cut to the left eye area and that he had a reddened area on the left side of his face, a cut on the left facial area, and swollen area to the head. Plaintiff also suffered a cut to his left hand. Plaintiff had a cut over his left eye and bruising. (Ryan Decl., Ex. 14 at 5; Alindajao Decl., Ex. 13 at 47.)

      69.    The senior hearing officer also cited to the photographs of the scene, specifically the photograph of the walker which showed it was damaged in such a way that was consistent with it being used as a weapon in coming to his guilty verdict. (Ryan Decl., Ex. 14 at 5.)

      70.    As a result of this Rules Violation Report guilty finding, Plaintiff lost 360 days of custodial credits. (Ryan Decl., Ex. 14 at 5; Ryan Decl., Ex. 15 at 18.)

      71.    Plaintiff filed a Grievance where the sole content was appealing the Rules Violation Report guilty verdict and the lost 360 credits. He did not allege excessive force was used against him or that anyone failed to intervene in said force. Plaintiff's Grievance was denied. (Moseley Decl., Ex. 4; Redmon Decl., Ex. 22.)

      72.    Plaintiff appealed this denial of his appeal, but this appeal was also denied. (Moseley Decl., Ex. 4; Redmon Decl., Ex. 22.)

      73.    Plaintiff's credits have never been returned or expunged. (Moseley Decl., Ex. 4; Redmon Decl., Ex. 22; Ryan Decl., Ex. 15 at 18.)

      74.    Defendant Vieth did not work in the area where this incident occurred and did not participate in the cell extraction. (Vieth Decl. at ¶¶ 3, 7, 8.)

      75.    At the time of the incident, Defendant Vieth was responsible for escorting inmates with mental health needs to their treatments in a separate building. During these appointments, she would stay with the inmate in this building for the duration of their appointment and would not respond to alarms in the Administrative Segregation Unit. (Vieth Decl. at ¶¶ 3, 7, 8.)

      76.    Plaintiff alleges that Defendant Vieth dumped four or five cups of water on his head, however, the toilets in Administrative Segregation have a limited level of water for safety

1   concerns.  (Pl.'s Dep. Tr. at 63:1-22, 86-89:10-11; Brown Decl. at ¶ 15.)

2       77.     Photographs of Plaintiff, taken immediately after the incident, show that his skin
3   and shirt are dry.  (Ryan Decl., Ex. 18.)

4       78.     Photographs of the cell show blood on the floor, but no water.  (Ryan Decl., Ex.
5   18.)

### C. Analysis of Defendants' Motion

Defendants argue that Plaintiff's claims against Defendants are barred by the favorable termination rule under Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997) due to not only receiving a guilty finding at a rules violation hearing within the prison resulting in 360 days of lost credits, but also a criminal conviction for a violation of California Penal Code § 69 where he was sentenced to three years concurrent to his underlying sentence from the same events as this lawsuit. Further, Defendant Vieth was not present at these events and should be dismissed.  In addition, Plaintiff failed to exhaust, in part, many of the allegations in his lawsuit.  And no reasonable juror could believe Plaintiff's version of events and they are entitled to summary judgment.

#### 1. Heck-Bar

The United States Supreme Court held in Heck v. Humphrey, 512 U.S. 477 (1994), that a plaintiff may not prevail on a § 1983 claim if doing so "would necessarily imply the invalidity" of plaintiff's conviction arising out of the same underlying facts as those at issue in the civil action "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Heck, 512 U.S. at 487. Thus, "Heck says that 'if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed.' " Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)). "Consequently, 'the relevant question is whether success in a subsequent § 1983 suit would 'necessarily imply' or 'demonstrate' the invalidity of the earlier conviction or sentence....'" Beets v. Cty. of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (quoting Smithart, 79 F.3d at 951). It is the defendant's burden to show that a plaintiff's claim is barred by Heck. See Sanford v.

11

Motts, 258 F.3d 1117, 1119 (9th Cir. 2001).

"To decide whether success on a section 1983 claim would necessarily imply the invalidity of a conviction, we must determine which acts formed the basis for the conviction." Lemos v. Cty. of Sonoma, 40 F.4th 1002, 1006 (9th Cir. 2022) (emphasis in original). "When the conviction is based on a guilty plea, we look at the record to see which acts formed the basis for the plea." Id. (citing Smith, 394 F.3d at 696–97 and Sanford, 258 F.3d at 1119–20).

California Penal Code § 69, subd. (a) makes it a crime to: "knowingly resist, by the use of force or violence, an officer, in the performance of his or her duty." Further, under California law, it is a "well-established rule that when a statute makes it a crime to commit any act against a peace officer engaged in the performance of his or her duties, part of the corpus delicti of the offense is that the officer was acting lawfully at the time the offense was committed." People v. Cruz, 44 Cal. 4th 636, 673 (2008). Therefore, a conviction under Cal. Penal Code § 69 determines that the officer's conduct was lawful during the course of activity that brought an end to plaintiff's criminal conduct. See, e.g., Beets v. County of Los Angeles, 669 F.3d 1038, 1040, 1044-45 (9th Cir. 2012) (finding that Heck barred excessive force claims when the officer "acted during the course of [the plaintiff's] criminal activity and brought that activity to an end").

Here, based on the evidence in the record, the Court finds that Plaintiff's excessive force claims are barred by his guilty plea in criminal court. It is undisputed that Plaintiff pled no contest to a criminal offense directly related to the events in which he now claims excessive force was used. (UF 7.) Plaintiff pled no contest and was found guilty of a violation of California Penal Code § 69, and he was sentenced to three years in prison to run concurrent with his determinant sentence. (UF 7, 10.) Plaintiff admitted that his stipulated plea included the entire punching, stomping, dragging, and toilet water incident of March 27, 2020, based on the probable cause statement and the reports in discovery. (UF 8.) The reports in discovery, that Plaintiff stipulated to as a factual basis for his admission, are the incident reports written by all Defendants (except Defendant Vieth). (UF 7.) As Plaintiff stipulated that these reports form a factual basis for his guilty plea of Penal Code § 69, Plaintiff stipulated that officers conducted an emergency cell extraction and only *after* Plaintiff swung and threw his walker, did officers engage in force.

(UF 7, 25-36.) In addition, these reports also detail Plaintiff's continual punching, kicking, resistance, and non-compliance. (UF 6, 7, 28-36.) Plaintiff stipulated that he boarded up his windows and was non-responsive to officers. (UF 20-24.) He also stipulated that he threw his walker when officers entered but stipulated that he refused to obey lawful commands. (UF 28-36.) Plaintiff further stipulated that he thrashed his body when officers attempted to escort him out of the cell and later thrashed his body and resisted when officers attempted to escort him down the hallway. (UF 40-41, 45-46.) Therefore, Plaintiff's excessive force claims are barred by Heck. Indeed, this finding is supported by this Court's recent decision in Tompkins v. Thomas, in which an inmate boarded up his cell windows and claimed officers used excessive force upon him. Tompkins v. Thomas, No. 1:22-cv-01415-JLT-EPG (PC), 2024 WL 1908104, at *8. Tompkins pled no contest to a violation of Penal Code § 69 based on "reports in discovery." The Court found Tompkin's allegations arising from the use of excessive force were inconsistent with the facts stipulated to in his criminal case. Id.; see also Briseno v. City of West Covina, No. CV 20-2986 MRW, 2021 WL 6690564, at **4-5 (C.D. Cal. Dec. 23, 2021); Sanders v. City of Pittsburg, 14 F.4th 968, 972 (9th Cir. 2021) (upholding grant of summary judgment based on Heck bar where plaintiff pled guilty to resisting an officer, and the factual basis for the plea was the officer's preliminary hearing testimony).[7] In sum, Plaintiff's allegations and the reports he stipulated to cannot both simultaneously be true, and the incident reports cannot be "sliced and diced" to determine what is true and not to comport with Plaintiff's version of events. In this instance, Plaintiff failed to limit the Incident Reports that he stipulated to as a factual basis for his plea. (UF 7.) Thus, "this single factual context, all of which was presented at [a] preliminary hearing and adopted by [plaintiff] as the factual basis of his plea, may not be, in hindsight, subject to temporal hairsplitting [in order to avoid the Heck bar]." Id. at 1206-07. Although a claim would not be Heck-barred if the excessive force took place after the resistance stops, in this case the stipulated and undisputed facts demonstrate that Plaintiff continued to resist throughout the

---

[7] Because Plaintiff's excessive force claims are Heck-barred, the Court need not address the other arguments raised in Defendants' motion.

duration of the cell extraction.  (UF 20-46.)

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and

2. The Clerk of Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 27, 2025**

STANLEY A. BOONE
United States Magistrate Judge

14